Good morning, ladies and gentlemen, my colleagues, Judges McEwen and Lee, welcome you to the Ninth Circuit. Just a few housekeeping things before we start. I'll call the cases in the order that they're on the calendar, and if you are here for argument by your case, there's a designation of how long you have for argument. And if you are the appellant, that includes any time you wish to reserve for rebuttal. So expect to be kept to your time limit. However, if we are still asking you questions, you don't need to ask permission to continue to answer a question if the judges take you into overtime. On the other hand, expect to be kept to your appointment, your time. It's your responsibility to keep track of things, but if you are the appellant and you are here for rebuttal, I'm looking at the clock and I'll try to remind you when we get to that point. The clock does count down and then it goes up. It doesn't mean I gave you extra time. It means you've moved into overtime. But I know you have things that you came here to say, and I hope that you understand that we also have questions, and so we consider this our time as well, and I do want to make sure that my colleagues have all of their questions answered because I'm sure that you would not want us to decide a case if we didn't get to ask the questions. So the first matter on calendar is Flores-Leyva v. Merrick-Garland, 22-1118. That's submitted on the briefs. It will be submitted as of this date. The second case, Tejada-Rauda v. Merrick-Garland, 22-583, submitted on the briefs, submitted as of this date. The next case is Martinez-Argüeta v. Merrick-Garland, 22-720, submitted on the briefs, submitted as of this date. The first case that is on for oral argument is Storm-Katosh v. United Airlines, 22-16400, and each side has 15 minutes. So good morning. Good morning, Your Honor. Good morning, Your Honors. I would like to... Tell me your name and who you're appearing for, just so my record is good. Yes, Your Honor. My name is Dow Patton, and I represent the appellant and plaintiff below Storm-Katosh. Oh, it's Katosh. I'm sorry. I'll do better. Thank you. I would like to reserve, Your Honors, five minutes for rebuttal. Okay. May it please the Court. This is an appeal from a district court order dismissing claims for discrimination and retaliation under California state law, based upon a removal by the respondent, United Airlines, Inc., based on diversity jurisdiction. And this appeal offers the court an opportunity to provide guidance, first to correct the claim and retaliation claim, but also to provide guidance to district courts in making required scheduling orders under Federal Rule 16b, to ensure fundamental fairness in the progress of civil litigation. First, the district court erred. I guess I want to clarify some things. There's things about your case that are confusing to me, and procedurally, I want to . . . It's my understanding that you dismissed a third amended complaint with prejudice, and then you're asking us to look in what's in the third amended complaint to somehow . . . because you wanted to appeal from the second amended complaint. So I have questions about that, since you voluntarily dismissed that. And I don't see anywhere that you're asking for leave to amend. Are you asking anywhere for leave to amend? No, we're not, Your Honor. We believe that the second amended complaint had sufficient factual allegations to state plausible claims for relief of the retaliation and discrimination claims. Okay, but then you're referring to facts in the third amended complaint that you dismissed voluntarily. Yes, Your Honor. But you're just saying, let's look at the second amended complaint and not look at the third amended complaint. And what charges did you dismiss with prejudice in the third amended complaint? Those were the intentional infliction of emotional distress and harassment claims, Your Honor. Okay, so what does that leave left? Then we're not considering those. That's correct, Your Honor. Okay, so you can't resurrect those. So what are you saying is live? So what is live, Your Honor, is the second motion to . . . 12b6 motion to dismiss, dismissed the Labor Code 1102.5 retaliation claim and the race and gender discrimination claims under the Fair Employment and Housing Act. Okay, here's what I have a question about. Retaliation is generally the easiest to survive everything. A lot of times discrimination charges don't make it, but retaliation. And I'm trying to figure out what in evidence we actually have about or what you can show on retaliation. I know that your client said she wasn't going to go. She's apparently a 20-year employee. She was a purser. She gets demoted back to, I guess it's flight attendant. I can't tell in here, and then she claims that no one told her anything about why she was demoted and that she previously had good evaluations and the demotion has some proximity to her sending some e-mails about a meeting that she said, I'm not going to attend on my personal time. What type of employee is she? I'm assuming for the airlines, and I can't tell from anything here. So, and apparently you're claiming that she, the airlines is claiming they don't have to tell her why she was demoted. So I don't know what you can show, and you're not asking for leave to amend either. If I didn't think that this was enough, I have all these questions and I can't find it in what you're asking for in the record or whatever. But I, my active mind could say that she probably has some rights as an employee, but maybe being a purser is an at-will type thing. I don't really know. And I don't know, I can't tell why she was, why she was demoted because she doesn't even tell us. So, Your Honor, we do allege that she was demoted specifically for not only refusing to attend the meeting, but by submitting not only her complaint, but the complaints of numerous other pursers that they were being, that their job duties were changing from simple employees covered by a collective bargaining agreement to management employees by performing managerial functions in violation of the wage orders that were cited in the second amending complaint at paragraph 44. And that's it. Maybe I could be more precise on the retaliation. Because your complaint, by and large, restates the statutory requirements, which is not a factual basis. I mean, you say she reasonably believed it was a violation, and then you go on to say, well, she was about, they should have known she was about to report something that was unlawful. And there's no indication in that email that she disclosed this legal violation at that time. So, to me, the difficulty you have, and I'm interested to figure out how you bridge the gap, is between stating the statutory language in the complaint, which doesn't get you anywhere as far as the facts, and where she reported as opposed to about to report or perceived that there was a problem. So your Honor, with respect to the perception by the employer which we alleged upon information belief, because at that time, we did not have the direct evidence that we obtained and that we could have obtained if the court below had not led us to be confused and both parties to believe that discovery had been stayed. So, the third amended complaint actually has those facts of direct evidence of a retaliatory animus for Storm Cattashay standing up and saying... I know, but the problem, as Judge Callahan pointed out, that went into the garbage bin, the third amended complaint. And I agree, if we were looking at the third amended complaint, we'd be in a different spot, but we can't really take what's in the complaint and then say, but what could have been in the complaint? So your Honor, what was available to us at the time we pled, and what we pled was that she had assembled the complaints of a number of different people to this change in this policy and then stood up and forwarded those to management, and then when was told that you're attending this meeting without pay, which is in itself a violation of the wage orders, that she said, no, I'm not attending. So that's standing up against an unlawful employment practice in violation of a wage order, and because she was perceived as some sort of ringleader or the one that gathered these together, they targeted her as the individual that was likely to be the one to raise this with the labor commissioner or elsewhere. Did she get a bad evaluation as a purser? No. She had never had one previously. All right. Did she get one after? She got one after her complaint, and we provided specific individuals who had engaged in substantially similar conduct that were not removed from the purser position. Was that in the Second Amendment complaint or the Third Amendment complaint? It was in the Second Amendment complaint, Your Honor. The specific individuals identified at paragraphs 23 through 27 and 51, and that's at excerpts 13. I don't know what further someone in plaintiff's position can plead other than the specific individuals that are comparators who did not complain and who are also coincidentally outside of her protected classes for the discrimination claim. I found your comparative. I couldn't find — you had a bunch of things there. It was like you threw it against the kitchen sink, but I had a hard time figuring out your comparative analysis. I just didn't think it was that you showed that they were similarly situated. Well, they're pursers, and at paragraph 23 of the Second Amendment complaint, the similarly situated comparator, not in her protected classes, had a question about service. And that was — the question about service was the pretextual basis for which plaintiff was demoted from purser back to regular flight attendant. But what's your — your discrimination is based on that she's African American and she's a woman. Correct. So how can I look at these other people and know that they — how can I do a comparative other than you just said there's other people out there that complained? Your Honor, at paragraph 23 of the Second Amendment complaint, excerpts 9, we say that he, George Rosette, is not in plaintiff's protected classes. So we're alleging specific disparate treatment based on — of discipline. Somebody engaged — had a question of a similar nature that they disciplined plaintiff for outside of her protected classes and suffered no demotion. Another similarly situated comparator, Christopher Thomas Bodine, not in plaintiff's protected classes, has this question about service. That's paragraph 25 of the Second Amendment. So what are her — what is the other side going to tell me is that — why she got demoted? Why are they going to tell me she got demoted? I doubt that they're going to get up and say that that's why she got demoted. Why are they going to — what deficiencies are they going to point to? They're going to — they're going to say that she had a question about the service. And about the services, the order in which drinks are served and meals, et cetera, on these long international flights. Are they going to say she had a bad evaluation, that there were other problems with her? They're going to say she had a bad evaluation, but — All right. Are the other people in a position where they have a bad evaluation and — two? We didn't get that in discovery. So because we — both parties believe that discovery had been stayed for the vast majority of the case, led on by the failure to issue a Rule 16 scheduling order. Wasn't — didn't this judge, this district judge, have a standing order, however, that sets out what the deadlines are? So the parties — Well, that question, that kind of is a yes or a no, and then we can go from there. I believe the court has a standing order, but I don't have it in front of me, Your Honor. Okay. I don't want to quiz you on the specifics, but it's more the situation when you're going in there as a counsel, you look at the judge's standing orders, and the standing orders kind of lay out the battle plan as far as the court is concerned, and it would seem to me that you would know from that standing order the timing that that court imposes. You don't need a specific scheduling order if it hasn't been issued. Well, that may be, Your Honor, but the court did issue a scheduling order. I understand that. And that scheduling order allowed for not even 60 days of discovery. But the judge never issued a stay on discovery, right? The judge did stay discovery at the initial case management conference and sent us to mediation. And both parties, as reflected in the supplemental excerpts provided by defendant, both sides believed that discovery was stayed. Well, I mean, the defense side will always want to stay on discovery. I mean, they have a lot more to give and sell, a lot more costly, so it's often incumbent on the plaintiffs to seek discovery, and this infects your advantage to seek discovery quickly. Oh, we did seek discovery quickly, Your Honor, but the other side refused and showed us the minute order that said, oh, no, we're going to mediation, and all deadlines are vacated. That's what the all deadlines, including the deadline for defendants, the individual defendants to respond to the complaint are vacated pending further order. The court will issue a scheduling order and order read the motion to dismiss if warranted after reviewing the status report. And in the status report, we provided, both sides provided a stipulated statement together that we believed that discovery had been stayed. We requested that, quote, discovery remained stayed. That's a supplemental excerpts five. So Your Honors, looking at the Second Amendment complaint, each of the elements of both the 1102.5 labor code retaliation claim and the Fair Employment and Housing Act's race discrimination and gender discrimination cases were pleaded were plausible because there were actual comparators listed and the actual wage orders that would potentially have been violated by United Airlines were set for. So are you conceding for purposes of this argument that all that we look at is the second and we can't look at the facts in the third? Your Honor, I would say that the facts in the third amended complaint were obtained. Some of them were obtained, especially the direct evidence of retaliatory animus. OK, but I think you can answer my question much like what Judge McEwen said. Are you saying that the facts in the third amended complaint can be considered by this court for purposes of evaluating the Second Amendment complaint, which you purposely dismissed the third and wanted to appeal the settlement, the standing order or the order of the scheduling order and the second amended complaint? So what what's your position about whether we can look at the third amended complaint? Your Honor may look at the third. The facts contained in the third amended complaint insofar as the we've requested that the court give instruction to the district courts on how to handle the scheduling and orders. Don't wait till the very end of the case to issue a scheduling order, though we can't look at them for the sufficiency of the second amended complaint. That is correct, Your Honor. All right. And you're not asking for leave to amend on the second amended complaint. You're standing your ground on that. The second amended complaint is sufficient on its face. Yes, Your Honor. OK. You've gone over your time, but we had a lot of questions. I'll give you two minutes on rebuttal. Thank you, Your Honor. OK. Good morning. Good morning, Your Honors. My name is Michelle Heidel-Gurkey. I'm the attorney for the defendants, United Airlines, Inc., Stephanie Lockman McLaren and Andrew Wilson. May it please the court. The appellant appeals the district court's order dismissing the second amended complaint, but as the court has noted, the appellant has not focused her appeal on the allegations in the second amended complaint. Instead, she's focused on the allegations in the third amended complaint, which were dismissed with prejudice. And that's significant for many reasons. First of all, she has waived her right to raise that issue in this appeal because the actual order that forms the basis of this appeal is the second amended complaint, not the third amended complaint. And so it's not proper for this court to consider that when it's not part of the appeal. Further, she never asked the district court for reconsideration of the second amended complaint being dismissed with prejudice. She had the opportunity, after the court dismissed the second amended complaint with prejudice, to seek leave to amend at that point because the judge did give the appellant the opportunity to amend on the harassment and intentional infliction of emotional distress claims. And she did, in fact, file that third amended complaint. And then shortly thereafter, she sought leave to amend to address some housekeeping items on the named defendants. But instead of also seeking leave to amend based on supposed new evidence and discovery, she didn't do that. She stood on the allegations, and she only sought leave to amend for those housekeeping items. So again, if she really thought that the evidence that she supposedly found in discovery now supported her claims, she should have asked the district court and given the judge the opportunity to address it at that level, not now as part of this appeal because it's not part of this appeal. Well, so, okay. You saw the questions that I was asking the plaintiff. And I think that this is all very, it's a procedural morass. But like getting back to this, probably my biggest concern is whether there's enough for retaliation. And there is proximity of the demotion with, she said, I'm not going to a meeting that you're not paying me for on my personal time, and that she gathers complaints from other people and puts that there. So, and also says that I'm surmising, she obviously is a union employee. I don't know how this works with when you become a purser, if you're at will or whatever, but she puts in there that United won't even tell her why she was demoted. And it's in close proximity to refusing to go to a meeting and sending emails to people that are complaining about this. And she claims that, which I guess I would assume that she never had a bad valuation, and now here she is. So what do I do with all of that? So first, Your Honor, on the procedural issue of whether or not an appellant has actually defended the allegations in the Second Amendment complaint with respect to that 1102.5 whistleblower retaliation, she does not devote any of her brief to actually arguing that she properly stated a claim. So I don't think it's our burden to try to manufacture arguments that are not part of the record and not part of the brief. But I'm happy to address that, because I think... Well, why does... We're reviewing that de novo, aren't we? The sufficiency of the allegations, yes, you are. So why don't... Yeah, I think it's probably best, right, to go to the allegations. Sure. So, you know, the allegations in the Second Amendment complaint are conclusory and vague, which is why I think there's some misunderstanding as to what exactly she's claiming. Ms. Cadachet was demoted because she had had some recent history of poor performance as a purser. She did not know the service standards. She had interpersonal conflict with her fellow flight attendants, and complaints had been filed. And so the supervisor did look into those issues and called her in and had meetings with her. And she was pushing back on trying to schedule these meetings. And right around that time, that is when she started sending the emails regarding not wanting to attend a voluntary meeting on personal time, which was fine. It was a voluntary meeting. And then gathering these opinions and thoughts of the other pursers that she wanted to present to management. And again, that was fine. But nowhere in those emails does she actually create any kind of allegation or causal connection between protected activity. She does not allege that there was a violation of law. She's raising general workplace concerns. Well, had she had a negative evaluation before the meeting? So she had received feedback from her supervisor. These pursers and flight attendants don't have formal performance evaluations in the  But there was feedback provided to her by her manager that expressed that these complaints had been raised, and that they were concerned about her performance. And then... Doesn't that go... Yeah, go ahead. We're basically arguing the facts here, though, beyond a motion to dismiss. So that's... I appreciate that that might come out. But if she basically says, look, here's the timing, which is suspect. Here's what it was doing. I gathered up all these complaints and concerns from the other purser or flight attendant people, and I presented them, and boom, then I get demoted. May or may not be true, but why isn't that enough to get passed on a motion to dismiss? Because all of the question of like, did she have bad evaluations and all that, we don't know that at this stage of the proceeding. So I think we're going to have to leave that to the side. And I agree, Your Honor. It's her burden to state plausible claims for relief. And she's not entitled to discovery until she does so. And I'm happy to address those issues with regard to the scheduling order. But in terms of whether or not she adequately alleged plausible claims for relief or whistleblower retaliation, the answer is no. And that's for several reasons. First of all, she's only raising general workplace concerns regarding what other pursers think about their job duties and any, you know, supposed change in job duties and being asked to, you know, encourage the other flight attendants to be friendly and smile and things like this. And the second thing is being asked to attend a voluntary meeting without pay is not a violation of the law. And nowhere does she actually allege that United violated the law or that she had a reasonable belief that they did that. She cites to Wage Order 4 in her second amended complaint. Wage Order 4 does not even apply to the airline industry. It's actually Wage Order 9. And when you are a collective bargaining agreement employee under the Railway Labor Act, there are many exemptions to the wage order rules in Wage Order 9. And so that's what she's alleging doesn't even apply. It's not reasonable for her to even think that this constituted illegal activity or that there was protected concerted activity. There wasn't. So on the discrimination claim, retaliation is the thinnest reed to get passed. And I mean, I think I'm sure because you do this type of law that, you know, a lot of times before the Supreme Court, discrimination claims will go down, but the retaliation claim will survive. What do we have before us on the discrimination claim? What in the second amended complaint and why is it sufficient or not sufficient? So the allegations of discrimination in the second amended complaint are very thin. First of all, she never alleges that there was any actual animus based on gender or race. There's no comments. There's no, you know, unlawful touching or anything that you would normally see in a harassment case or even in the discrimination case. You know, she's not saying in her allegations that any particular person in management harbored animus towards her. All she's relying on is the fact that these, you know, she lists several people in the second amended complaint who she claims were similarly situated. But where she really fails is she does not actually allege the context needed to support that these people are actually similarly situated. You know, she doesn't allege whether or not they were, you know, under review of poor performance issues like she was. She doesn't allege that they had the same supervisor. She doesn't allege that they engaged in the same type of, you know, supposed complaints or protected conduct or what their performance was. And Ms. Cadachet, you know, she was very much unique from them. And so they're not similarly situated. And counsel made the argument that, you know, they were precluded from doing discovery on this issue. Again, I think that puts the cart before the horse. You're not entitled to discovery until you can actually plausibly state a claim for relief under Rule 8. But this judge did not stay discovery except at the very initial outset of the case when we were, you know, had to do our Rule 16 conference and then we went to that initial mediation. But since June 2021, the judge was very clear with the parties that he was not staying discovery. He denied our request to stay discovery twice. And he told us in his standing order that you can expect to go to trial within 18 months of the initial case management conference. So everybody was on notice that we should be doing discovery. We decided as the defendants not to engage in a lot of discovery because we were confident that the claims would be dismissed as part of our motion practice. Plaintiff has to prove her case. If she wanted discovery, nothing was stopping her from doing it. And her claim that she only had 52 days to do discovery is completely false and not part of the record. But where is the reference in June 2021 when the judge makes clear that the discovery has not stayed? Where is that? Well, that is in his order to us, Your Honor. He told us in, let me look at these dates. So on June 24th, 2021, we had the initial case management conference. And then we filed a joint status report on September 23rd, 2021. And in that, we asked the court to stay all the discovery and pending deadlines. He denied that on October 4th, 2021. And then he issued his first order dismissing the first amended complaint, October 28, 2021. Plaintiff then filed her second amended complaint on November 12th, 2021. And the individual defendants were not even served until November 24th, 2021. So that was part of this whole, like, scheduling order issue. Well, the scheduling order, at least one that's called scheduling order, doesn't get issued until 2022. Correct. But you're saying that, if I understand you correctly, that implicit in the denial of your request to extend discovery was the fact that the judge's normal scheduling would go forward? I would say it wasn't even implicit. It was explicit. In his order, he told us that filing a motion to dismiss does not justify staying discovery. There was no confusion. And that's why the parties asked him to reconsider, you know, this. Because from our perspective, you know, discovery can be very expensive and time-consuming. And you know, we felt confident that the motions should be granted. But you know, Judge Donato disagreed that discovery should be stayed. Plaintiff was perfectly fine to go along with it. But when the judge issued his orders denying the stay of discovery, plaintiff was on notice that she needed to start discovery if she felt she needed it. So I think the complaint that I hear from Ms. Katoche's lawyer is that they were relying on the scheduling order, which wasn't issued until 2022. And in Rule 16, it talks about issuing a scheduling order. You're supposed to do that as soon as practicable, unless you find, I think it's good cause is what the rule says. I don't see good cause even addressed in the scheduling order. So is there a technical breach of Rule 16 here? No, Your Honor. And this is why. I think, you know, obviously the court's aware that the district courts have broad discretion in setting scheduling orders and in managing their docket under Rule 16. And we were before the court on several occasions, either, you know, through submissions in writing or at the initial case management conferences that we had. And you know, the court at the initial case management conference told us that, you know, there was this pending motion, the first motion by United to dismiss the First Amendment complaint. The individual defendants had not been served yet. And you know, he ordered us to go to mediation. So he told us flat out that he was going to delay issuing the initial scheduling order for that reason. And then, you know, once some of those other events started to occur and, you know, we filed the motion to dismiss the Second Amendment complaint. And again, the parties asked for a stay in discovery. He denied that. But I believe that the judge was very clear that, you know, because the pending motions were still under submission, that he was not going to issue a detailed scheduling order. But when you look at it in conjunction with his standing order, which clearly says that counsel should expect to have a trial date within 18 months, the parties are on notice. And there is good cause for him to have delayed that initial scheduling order because of kind of the procedural abnormalities of this case, the delay in serving the individual defendants, and the fact that the parties went to that early mediation. So I don't think there was a, you know, any kind of violation of Rule 16 by the district court. You know, he certainly could have issued one if he wanted to earlier, but I don't think it was absolutely necessary for him to do that because we were in communication with him through his orders and through our submissions. So we knew where we stood. And we knew we were on the clock and we needed to do discovery. Can I go back to the discrimination claim? I mean, why is it enough at this motion to dismiss stage for the plaintiff to have alleged two allegedly similarly situated people who were not demoted? I know you said, well, she may have some negative evaluations, but is that in the complaint? And I think, maybe I'm confusing the Third Amendment complaint with the Second Amendment complaint, but I think the complaint says that she didn't have any negative evaluations. That may not be true, but at least the complaint asserts that. So the reason why the discrimination cause of action is not properly pled, among many reasons, is that, you know, she throws out these names of other people who, you know, she claims also had questions about service issues. And that's how she's trying to kind of frame, you know, the protected activity or what these people, how they're similarly situated to her. But that's not why plaintiff, you know, was, you know, demoted from the PERSA program. It was not because she raised a question about what's the proper service. It was because of her poor performance. Well, that's your side of it. I understand. We have to, okay. But hypothetically, if that were enough to get past a motion to dismiss, then it might be back on summary judgment, and all of that would come out after discovery. But I'm wondering, hypothetically, since he's, they're sticking their guns on that's a second amended complaint, they didn't ask for leave to amend. If hypothetically, and I'm just saying hypothetically, I believe that it wasn't sufficient at this point, but I'm hearing all this other stuff that could be in a complaint that might make it sufficient. Do we have authority to grant leave to amend? No, I don't believe that you should grant leave to amend. Well, you're not, no. Do we have authority, I asked you? Well, I don't think that he's requested leave to amend. So I think the answer is no to that. If he had requested leave to amend, then, you know, I believe that the court could potentially have considered that. Although, again, he did not ask the district court to get leave to amend again because of based on, you know, supposedly newly discovered evidence. So I don't think this court has the authority to give him leave to amend if he had asked for it, and he hasn't asked for it. So I think he's stuck with the allegations in the second amended complaint, and I don't think that the discrimination complaint is properly pled. There's no allegations of actual discriminatory animus in terms of comments or that the decision makers harbored any kind of discriminatory animus towards her. Okay, I think I understand your argument. We've taken you over, but I want to find out if my colleagues have any additional questions. We don't. So I'll bring yours to a close, and I'm giving two minutes for rebuttal, which puts you both about even in your time. Thank you. As even as a parent could be between children and lawyers. How's that? I try to be fair. That's... Thank you. All right. Two minutes. First, Your Honor, this notion that since June 20th, 2021, the parties were on notice that discovery was proceeding, that's simply false, Your Honor. The Respondents' Council submitted and signed, in supplemental excerpts number five, as such, and this was dated September 23rd, 2021, as such, the parties proposed that all deadlines and discovery remain state. So... Did that get denied? It was denied. Okay, well, then... That's the end of the story there. I think you should probably spend your time on the substantive claims, which potentially have more delays. Certainly, Your Honor, but with respect to how the court denied that, it said, the request to stay all pending deadlines is denied, not... And discovery, opening and closing discovery, is not necessarily a deadline. There was no deadline with respect to discovery. It was still state. Now, with respect to the retaliation claims, Your Honor, with respect to whether or not this court has the authority to remand with orders to permit the filing of an amended complaint, I believe, Your Honors, do have that authority. However, we do believe that the second amended complaint sufficiently states those... The facts. Temporal proximity is stated and it's undeniable, and it hasn't been controversial in what you've heard. And with that, Your Honors, we would submit. All right. Thank you both for your arguments in this matter. This case will stand submitted.
judges: McKEOWN, CALLAHAN, LEE